UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSEPH BOTELHO and RIDOC INMATES : | |
|     Plaintiffs, : | |
| : | |
| v. : | C.A. No. 23-294WES |
| : | |
| RHODE ISLAND DEPARTMENT OF : | |
| CORRECTIONS, et al., : | |
|     Defendants. : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On July 12, 2023, Plaintiff Joseph Botelho, an inmate in the custody of the Rhode Island Department of Corrections ("RIDOC"), filed a *pro se* complaint on behalf of himself and "RIDOC Inmates," alleging that he has been subjected to deliberate indifference to his serious medical needs in violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution and the Americans with Disabilities Act ("ADA"). ECF No 1. Plaintiff's civil cover sheet indicates that he is asserting federal law claims based on 42 U.S.C. § 1983, as well as "[m]edical [m]alpractice," presumably as a state law cause of action. ECF No. 1-3. As Defendants, Plaintiff has named eleven individuals and entities:

    1)    RIDOC;

    2)    RIDOC/Abbey Medical physician, Dr. Robert Achindiba, in his individual and official capacities;

    3)    RIDOC registered nurse, Nurse Eunice Bosede Kola-Idowu;

    4)    RIDOC administrator of health services, Dr. Leslie Bridgman, in her individual and official capacities;

    5)    RIDOC dentist, Dr. Clark, in his/her individual and official capacities;

  6)  Vincent Jackovich;

  7)  Dorothy Krakue;

  8)  Rhode Island Department of Health (RIDOH");

  9)  MID America; and

  10)  Jon Doe;

  11)  Jon Doe.

For remedies, Plaintiff seeks punitive damages and an injunction requiring him to be taken to the hospital for surgery and requiring RIDOC to adopt health care reform. ECF No. 1 at 5. Plaintiff also asks the Court to "[i]ssue [s]anction on [m]edical license for [p]unishment." Id.

  Plaintiff's complaint is accompanied by an application to proceed *in forma pauperis* (IFP), which has been referred to me. ECF No. 2. While Plaintiff's IFP application is properly accompanied by his six-month account statement, ECF No. 3, and establishes that he is eligible, in light of the IFP application, the Court is required by statute to screen Plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A and to enter an order of dismissal if it is frivolous or fails to state a claim on which relief may be granted. Munir v. State of Rhode Island Superior Court, C.A. No. 22-57WES, 2022 WL 670888, at *1 (D.R.I. Mar. 7, 2022), adopted by text order (D.R.I. Mar. 23, 2022). Having performed this review and for the reasons discussed below, I find that the complaint fails to state a claim and recommend that it be dismissed with leave to file an amended complaint within thirty days.

**I. Background**

  The body of Plaintiff's pleading, ECF No. 1, contains almost no factual matter to support the asserted claims. It simply alleges that Plaintiff has been discriminated against and denied medical treatment for "Hernia, Dental Care, Pschiatric Care," that he has been denied surgery

since 2014, that he has been denied meaningful treatment for hernia for many years, and that he has been denied an unspecified mental health medication. ECF No. 1 at 4-5. As a consequence of these allegations of the denial of care, the complaint claims that Plaintiff has been "unable to live life [d]ue to limited [a]bility in [m]oving [a]round," that he experiences "[e]xtreme [p]ain [and] suffering," and he has problems chewing and digesting food. Id. at 5. He told an unspecified "Administrator [b]ut she [d]id [n]othing." Id.

The complaint has two exhibits that provide additional detail.[1] Exhibit A contains medical records from 2023, while Exhibit B consists of a handwritten letter and related writings from Plaintiff to RIDOH dated June 16, 2023, and a medical record from 2014. ECF Nos. 1-1, 1-2.

The attached medical records from 2014 and 2023 tell a story that appears to be materially different from the conclusory allegations in the body of the complaint. For starters, the attached 2014 medical record does not reflect a diagnosis of hernia for which surgery or other treatment was ordered; rather, it states a diagnosis of "diastasis recti of the abdominal musculature" that "is not considered to be a surgical issue," with the recommendation that Plaintiff lose weight and the suggestion that he speak to the dietician. ECF No. 1-2 at 8. This record specifies: "no other Rx required at this time." Id.

The attached records from 2023 begin with a March 21, 2023, appointment with a nurse practitioner regarding ongoing treatment of diabetes (which reflects RIDOC's concern regarding

---

[1] More recently, Plaintiff also filed a "[d]eclaration" with additional information regarding his claims, together with another copy of what he previously filed as Exhibit B to the pleading. ECF No. 5. For screening purposes, I have included these new facts in considering whether Plaintiff has stated a plausible claim. However, Plaintiff is cautioned that these facts are not in the operative pleading. To the extent that Plaintiff opts to file an amended pleading, as I recommend he must for this case to survive screening, his amended complaint must include all of his factual allegations in numbered paragraphs, referencing such supporting exhibits as he may wish to attach, as required by Fed. R. Civ. P. 8(a) and 10, or he will be at risk of dismissal.

Plaintiff's "non compliance with meds and diet") and for examination based on Plaintiff's "report" that he had a ventral hernia and was experiencing abdominal pain. ECF No. 1-1 at 8-11. On examination, the nurse made normal findings (including her observation that Plaintiff was able to sit without difficulty or evidence of pain), except for her observation of what appeared to be a hernia for which she ordered an ultrasound with medical follow up in one month. Id. at 10-11. The ultrasound, which was performed on May 5, 2023, reflects the conclusion of "[n]o definite evidence for ventral hernia," with the recommendation for a CT scan if "clinical concerns remain[] high." Id. at 3. Soon after, on May 25, 2023, Plaintiff was seen by Defendant Dr. Robert Achindiba for follow up on the ultrasound. Id. at 4-6. During this appointment, Plaintiff denied abdominal pain and his physical examination was entirely normal. Id. at 6-7. Dr. Achindiba's plan is based on the advice of the physician who interpreted the ultrasound – "f/u with CT is advised if clinical concern remains high." Id. at 7.

The remainder of the exhibits are the June 16, 2023, writings Plaintiff sent to RIDOH. These reflect that Plaintiff complained to RIDOH[2] (1) that he had been given Ibuprofen for hernia pain instead of the surgery that he has "needed . . . for my hernia since at least 2014 but they (the D.O.C.) has been stonewalling me and playing stupid games rather than just give me the surgery that I need"; (2) that Defendant Dr. Achindiba (contrary to the advice reflected in the attached medical record) advised against surgery for hernia because the hernia "is too big"; and (3) "Nurse Unise"[3] and "Nurse Dorothy"[4] refused to send him to Dr. Achindiba (because he had

---

[2] Plaintiff's writings to RIDOH make other complaints that do not appear to be related to the denial of medical care stated in the body of the complaint, such as his desire for an increased dose of Gabapentin and to see a specialist regarding neuropathy. ECF No. 1-2 at 6; see ECF No. 5 at 2. Because those matters do not appear to be the subject of Plaintiff's complaint, they are not summarized here.

[3] It is conceivable that "Nurse Unise" is Defendant Nurse Eunice Bosede Kola-Idowu.

[4] It is conceivable that "Nurse Dorothy" is Defendant Dorothy Krakue.

4

already seen him) and refused to send him for tests that had been scheduled by another nurse. ECF No. 1-2 at 2-3, 6. Regarding "Nurse Unise," Plaintiff also complained to RIDOH that she has "yelled at [him] and humiliated [him]" so he cannot take medication in her presence and refused to take it, as well as that she told "CODAC" physicians that Plaintiff is a hoarder of medication[5] and only "want[s] to get high," although the RIDOH writings do not state that these events caused Plaintiff to be denied prescribed medication.[6] ECF No. 1-2 at 2-4. This writing also advises RIDOH that Plaintiff experienced gastritis "likely" from taking too much Ibuprofen, which he was taking for abdominal pain and "because I have a tooth that needs to be pulled." ECF No. 1-2 at 6. Regarding dental care, Plaintiff complained to RIDOH, "[s]o instead of pulling that tooth they have been feeding me Ibuprofen instead." Id. Plaintiff's declaration adds that "for [f]ive months they did not send me out to get a tooth pulled." ECF No. 5 at 1.

Plaintiff's RIDOH writings close with:

> Why can't I get the same [t]reatment as [e]veryone [e]lse? . . . I am . . . a diabetic . . . . I just want equal medical (and dental) treatment as everyone else. Better than what I have been receiving.

ECF No. 1-2 at 6-7. The pleading (including the exhibits) does not reveal how Plaintiff's medical treatment differs from what is afforded to other prisoners, including that there is nothing permitting the inference that, as a prisoner with diabetes,[7] Plaintiff's medical care is different than medical care provided to non-diabetic prisoners.

## II.     Standard of Review, Applicable Law and Analysis

---

[5] Plaintiff concedes that he has hoarded medication but alleges that he did it "over a year ago." ECF No. 1-2 at 6.

[6] The body of the pleading states that Plaintiff has filed a lawsuit in state court for "my MAT treatment." ECF No. 1 at 9. It is conceivable that this is a reference to medically assisted treatment for substance use disorder. Id. at 5.

[7] Nor does Plaintiff allege any facts permitting the inference that his conceivable status as an individual with substance use disorder has resulted in discriminatory treatment.

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2) and 1915A is identical to the standard used when ruling on a Fed. R. Civ. P. 12(b)(6) motion. Chase v. Chafee, No. CA 11-586ML, 2011 WL 6826504, at *2 (D.R.I. Dec. 9, 2011), adopted, 2011 WL 6826629 (D.R.I. Dec. 28, 2011). That is, "[t]o state a claim on which relief may be granted, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (cleaned up). In making this determination, the Court must accept a plaintiff's well-pled factual allegations as true and construe them in the light most favorable to him. Id. Although the Court must review pleadings of a *pro se* plaintiff liberally, Instituto de Educacion Universal Corp. v. United States Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000), the Court need not credit bald assertions or unverifiable conclusions, Chase, 2011 WL 6826504, at *2. Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (cleaned up). A complaint based on speculation cannot survive this scrutiny in that the factual content must be sufficient to "nudg[e] the claim . . . across the line from conceivable to plausible." Id. at 683 (internal quotation marks omitted).

On the merits of the § 1983 claim, as a state adjudicated prisoner, Plaintiff's right to constitutionally adequate health care arises pursuant to the Eighth/Fourteenth Amendments. Perry v. Roy, 782 F.3d 73, 78 (1st Cir. 2015); Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014). To sustain such a claim, Plaintiff must satisfy a two-prong test. Abernathy v. Anderson, 984 F.3d 1, 6 (1st Cir. 2020) (per curiam). First, the complaint must plausibly allege as an objective matter that Plaintiff had a serious medical need that received inadequate care. Id. A serious medical need is one that "has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." Id. (internal quotation marks omitted). The emphasis is on seriousness – the Constitution proscribes treatment that shocks the conscience. Kosilek, 774 F.3d at 83. Inadvertence or negligence is not enough. Leavitt v. Corr. Medical Servs., Inc., 645 F.3d 484, 497-98 (1st Cir. 2011). The second prong is subjective. Abernathy, 984 F.3d at 6. It requires that the pleading allege facts sufficient to demonstrate that each defendant was deliberately indifferent in that each was aware of the serious need for prescribed treatment and still failed to provide it. Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003). Constitutional liability in a § 1983 action is direct, not vicarious in that it must be premised on the defendant's own acts or omissions. See Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998); Silva v. Clark, C.A. No. 19-568 JJM, 2022 WL 1091336, at *13 (D.R.I. April 12, 2022), adopted by text order (D.R.I. May 2, 2022). If a prisoner has received some medical attention and the dispute is over its adequacy, "federal courts are generally reluctant to second guess medical judgments." Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981) (internal quotation marks omitted). Plaintiff's ADA claim requires that he must plausibly allege that he is a qualified individual with a disability who has been subjected to discrimination through the denial of care "'by reason of such disability.'" Snell v. Mici, Civil Action No. 16-cv-11643-DJC, 2019 WL 4303264, at *6 (D. Mass. Sept. 11, 2019) (quoting 42 U.S.C. § 12132), aff'd sub nom. Snell v. Neville, 998 F.3d 474 (1st Cir. 2021).

When the complaint, the RIDOH writings and the declaration are read together, the closest they come to plausibly stating a denial of prescribed medical treatment for a serious condition is the claim that hernia surgery was prescribed in 2014, but since has been denied and delayed by unknown persons, causing Plaintiff to suffer extreme pain, the need for excessive pain medication and the inability to live life due to his limited ability to move around, all of which Plaintiff communicated to an unknown "Administrator." ECF No. 1 at 5. The problem is

that this claim is squarely contradicted by Plaintiff's attached medical records, which establish that a hernia was not diagnosed, either in 2014 or in 2023, that the actual diagnosis did not and does not require surgery or any other treatment (except for the 2014 recommendation that Plaintiff should lose weight with the offer of assistance from a dietician and the 2023 recommendation that Plaintiff's condition should be monitored), that clinical observations do not support Plaintiff's claim of extreme pain, and that, as of late May 2023, RIDOC and RIDOC's physician Defendant Dr. Achindiba were actively monitoring Plaintiff's condition. See DeBarros v. Frank, C.A. Nos. 20-260WES, 20-268WES, 20-293WES, 20-297WES, 2020 WL 5570005, at *1 (D.R.I. Sept. 17, 2020) (when pleading is inconsistent with exhibits plaintiff attached to it, claims in pleading are rendered implausible), adopted, 2021 WL 165096 (D.R.I. Jan. 19, 2021), appeal dismissed, No. 21-1090, 2021 WL 3417914 (1st Cir. May 21, 2021).

     Also fatal to this claim is that neither the pleading nor the RIDOH writings nor the declaration contains any allegations that any of the named Defendants was deliberately indifferent to Plaintiff's hernia or other abdominal condition. To the contrary, the medical record exhibits reveal that, during 2023, RIDOC and Dr. Achindiba provided Plaintiff with significant medical attention for his abdominal complaints (including an examination by a nurse practitioner, an ultrasound, an appointment with a physician, active monitoring and a possible CT scan if medically indicated). Otherwise, it is impossible to ascertain what are the actions or omissions of the named Defendants that could potentially amount to deliberate indifference. Thus, while it is conceivable that the unknown "Administrator" to whom Plaintiff alleges he complained is Defendant Dr. Bridgman, the pleading does not name her and does not reveal when or about what medical concern this complaint pertained. Nor is the one-time refusal mentioned in the RIDOH writings by two nurses – who conceivably are Defendants Nurse Kola-

Idowu and Ms. Krakue – to send Plaintiff back to Dr. Achindiba (because he had just seen him) and for testing sufficient to state a claim for an actionable denial of care without further factual background regarding when the refusal occurred, why, what serious medical condition was impacted and how the refusal resulted in injury or the risk of injury. In short, as pled, none of Plaintiff's claims about the denial of surgery or other treatment for a hernia come close to plausibly stating a § 1983 claim against any Defendant derived from an Eighth/Fourteenth Amendment breach of the duty to provide constitutionally-minimal health care. Nor is there any suggestion of facts permitting the inference of the discrimination that is required for a plausible ADA claim.

     Plaintiff's other two claims (denial of unspecified mental health medication and dental care) are even less specific. The pleading and related filings contain only the conclusory claim that Plaintiff has been denied mental health medication with no supporting facts that are plausibly linked to such a claim. As for the denial of dental treatment, the pleading is entirely devoid of facts, while the RIDOH writings/declaration reflect that Plaintiff had a tooth causing pain that, for five months, he believed should have been pulled but was not. There are no facts reflecting a denial or delay of prescribed dental treatment and nothing to link Defendant Dr. Clark (alleged to be a dentist) or any other Defendant with such a denial of treatment. Finally, Plaintiff's filings provide no information at all to explain why several of the Defendants are named. Thus, RIDOH may be the recipient of Plaintiff's letter and related writings, but otherwise there are no allegations about its involvement in Plaintiff's medical care. And there is no information at all to explain why Plaintiff has named Vincent Jackovich, MID America and two Jon Does.

With these glaring deficiencies, I find that Plaintiff's complaint fails to state any plausible claim of a constitutional deprivation or actionable discrimination.  Therefore, I recommend that it be dismissed.  However, because it is possible that Plaintiff can marshal facts to support a claim of denial of medical care due to deliberate indifference of named RIDOC officials or of discrimination in his receipt of medical care, I recommend that he be afforded thirty days to file an amended pleading.  If he fails to do so or if the amended complaint similarly fails to state a claim, I recommend that it be dismissed with prejudice.

In light of Plaintiff's reference on his civil cover sheet to "[m]edical [m]alpractice," ECF No. 1-3, I pause to consider whether this pleading plausibly alleges an actionable state law tort.  It fails to do so for two reasons.  First, there is nothing in the pleading, the exhibits or the declaration to suggest facts to meet the critical state law element of breach of a standard of care resulting in injury.  See Foley v. St. Joseph Health Servs. of Rhode Island, 899 A.2d 1271, 1277 (R.I. 2006) (setting out elements of medical malpractice).  Second, and fatal to Plaintiff's ability to sustain a state law cause of action in federal court, the pleading and exhibits do not permit the inference that there is diversity of citizenship, which is critical for this Court to entertain a state law claim that is not joined with a viable federal law claim.  That is, if the § 1983/ADA claims are dismissed as I recommend, federal question subject matter jurisdiction based on 28 U.S.C. § 1331 lapses and diversity jurisdiction under 28 U.S.C. § 1332(a) is not available either for a suit in which the State (RIDOC, RIDOH and individuals sued in their official capacities) is the real party in interest, see Moor v. County of Alameda, 411 U.S. 693, 717 (1973) ("State is not a 'citizen' for purposes of the diversity jurisdiction"), or for a suit in which Plaintiff, a Rhode Island prisoner, and at least one defendant is a citizen of Rhode Island.  BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 695 (1st Cir. 2023).

Finally, to the extent that Plaintiff purports to sue on behalf of a class of "RIDOC inmates," such a claim must be dismissed because, as a *pro se* litigant, he may not represent the interests of a Fed. R. Civ. P. 23 class. Munir v. Superior Ct., C.A. No. 22-39MSM, 2022 WL 669699, at *3 (D.R.I. Mar. 7, 2022), adopted sub nom. Munir v. Rhode Island Superior Ct. Corp., 2022 WL 844233 (D.R.I. Mar. 22, 2022); see Nickerson v. Providence Plantation, C.A. No. 19-00030-WES, 2019 WL 720703, at *4 (D.R.I. Feb. 20, 2019) ("[i]ndividuals appearing *pro se* cannot adequately represent and protect the interests of a Rule 23 class"), adopted by text order (D.R.I. Nov. 19, 2019), affirmed, No. 21-1444 (1st Cir. March 13, 2023). This principle is consistent with the applicable federal statute. See 28 U.S.C. § 1654 ("[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein"). It is also memorialized in this Court's Local Rules. DRI LR Gen 205(a)(2). Plaintiff's assertion of claims on behalf of "RIDOC inmates" should be dismissed.

### III. Conclusion

Based on the foregoing, pursuant to §§ 1915(e)(2)(B) and 1915A(b), I recommend that Plaintiff's complaint be dismissed because, as written, it fails to state a plausible claim against any of the named Defendants. Nevertheless, because it is possible that Plaintiff may be able to file an amended pleading that plausibly states either a federal law claim or a state law claim over which this Court has subject matter jurisdiction, I recommend that he be given leave to do so within thirty days. If he fails to do so or if the amended pleading still fails to state a plausible federal law claim, I recommend that this case be dismissed with prejudice. If he fails to do so but the amended pleading states state law claims over which this Court lacks subject matter jurisdiction, I recommend dismissal without prejudice.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 28, 2023